UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARIO CAMPA,

        Petitioner

    v.                                                   C-1-03-550

JAMES ERWIN,

        Respondent

## ORDER

This matter was referred pursuant to 28 U.S.C. § 636 to the United States Magistrate Judge for consideration and report on the Petition for Writ of Habeas Corpus filed by the petitioner pursuant to 28 U.S.C. § 2254.  The matter is before the Court upon the Report and Recommendation of the Magistrate Judge (doc. no. 11) recommending that the Petition for Writ of Habeas Corpus be dismissed, and upon petitioner's objections thereto (doc. no. 13).

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, brings this action through counsel for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition, respondent's return of writ and petitioner's responses. (Docs. 1, 7, 9).

## Procedural Background

The 2000 term of the Hamilton County, Ohio, grand jury indicted petitioner on trafficking (count 2), preparing for sale (count 3) and possessing (count 4) marijuana as defined in Ohio Rev. Code §§ 2925.03(A), 2925.07(A), 2925.11(A).[1] (Doc. 7, Ex. A). On February 2, 2001, defense counsel filed a motion to dismiss or alternatively, to grant a mistrial on the ground that the drug evidence had been destroyed and the prosecutor had failed to disclose it. (Doc. 7, Ex. B). Defense counsel discovered this information on the second day of trial during the direct examination of a state's witness. (*Id.*). The trial court dismissed the preparation and possession counts. (Doc. 7, Exs. C, D). On February 8, 2001, a jury found petitioner guilty of the remaining trafficking count. (*Id.*, Ex. E).

On March 9, 2001, petitioner filed a motion for a new trial based on his co-defendant's admission that petitioner had not supplied drugs to him. (*Id.*, Ex. F). On March 29, 2001, the trial court declined to grant relief because it found the statement lacking credibility in that it contradicted the co-defendant's prior statement and petitioner's statements. (*Id.*, Ex. I).

On March 30, 2001, the court sentenced petitioner to eight years in prison. (*Id.*, Ex. K).

---

[1] Count 1 charged co-defendant Montenegro with trafficking in cocaine.

3

With the assistance of counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, raising eleven assignments of error. (*Id.*, Ex. N). The following two assignments of error correspond to the two grounds for relief raised in the instant habeas corpus petition:

> 1. The trial court erred to the prejudice of appellant by failing to grant his motion for dismissal, by allowing the case to proceed to trial, and sentencing the appellant to prison when the trial court lacked jurisdiction and when the proper venue for the trial was not in Hamilton County, Ohio.
>
> 2. The trial court erred to the prejudice of appellant as he was denied due process of law as the prosecuting attorney engaged in egregious acts of misconduct and Brady violations.

(*Id.*). On March 29, 2002, the Ohio Court of Appeals affirmed the trial court's judgment. (*Id.,* Ex. P).

Through the same counsel, petitioner timely appealed to the Supreme Court of Ohio, raising six propositions of law, four of which correspond to the claims raised in his habeas corpus petition and challenge the venue and jurisdiction of the trial court and allege that the prosecutor failed to disclose that the drug evidence had been destroyed. (*Id.*, Ex. S). On August 7, 2002, the Supreme Court of Ohio declined jurisdiction and dismissed the appeal as not involving any substantial constitutional question. (*Id.,* Ex. U).

Through counsel, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising the following grounds for relief which are quoted verbatim:

4

> **GROUND ONE:** Violation of Due Process occurred when the State Court prosecuted the Petitioner without having proper jurisdiction over alleged offense.
>
> **GROUND TWO:** The State Prosecutor engaged in Misconduct which effected the fairness of the trial proceedings in this case.

(Doc. 1, Habeas Petition).

In his return of writ, respondent argues that petitioner's first ground for relief was not fairly presented as a federal constitutional issue to the state courts or alternatively, that it is not cognizable on habeas corpus review because it involves a state law issue. Respondent further asserts that petitioner's second ground for relief lacks merit. (Doc. 7).

## OPINION

### I. Petitioner is not entitled to habeas corpus relief with respect to his first claim that the state court lacked jurisdiction to try him.

As his first ground for relief, petitioner asserts that the state trial court lacked jurisdiction to try him because he was not present in Ohio during the commission of the crime. Petitioner avers that in convicting him without jurisdiction, the state court deprived him of due process of law.

A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.), *cert. denied*,

488 U.S. 866 (1988).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied*, 488 U.S. 1011 (1989). A state court's decision as to proper venue or jurisdiction generally does not raise a cognizable constitutional claim. *Davey v. Stegall,* No. 95-2198, 1996 WL 708336, at **1 (6th Cir. Dec. 5, 1996); *Wellman v. Chapleau,* No. 95-6123, 1996 WL 325212, at **2 (6th Cir. June 12, 1996).  *Cf.  Lott v. Coyle,* 261 F.3d 594, 606 n.6 (6th Cir.), *cert. denied,* 534 U.S. 1147 (2001).  Errors in state law that do not violate a specific constitutional right are not cognizable in habeas corpus, unless they result in a proceeding that is fundamentally unfair, and thus violates the Due Process Clause. *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.), *cert. denied,* 464 U.S. 962 (1983).

As support for his contention that the federal court may review a claim challenging the jurisdiction of the state court in a habeas corpus petition, petitioner cites *United States ex rel. Condon v. Erickson,* 459 F.2d 663 (8th Cir. 1972).  That case is distinguishable because the issue in *Erickson* of whether South Dakota had jurisdiction to try the defendant of a crime which occurred on an Indian Reservation turned on the interpretation of an Act of Congress, not state law.  *See United States ex rel. Condon v. Erickson,* 344 F.Supp. 777 (D. S. D. 1972), *aff'd,* 478 F.3d 684 (8th Cir. 1973).

6

In this case, the Ohio Court of Appeals determined that Ohio Rev. Code § 2901.11(A) governs the state court's jurisdiction. The statute subjects a person to criminal prosecution in Ohio if "[h]e commits an offense under the laws of [the] state, any element of which takes place in [the] state." Under Ohio Rev. Code § 2925.03(A)(1), the drug trafficking statute, forbids a person from knowingly offering to sell a controlled substance. The Ohio appellate court relied on Ohio caselaw which holds that in a drug trafficking case, an offer to sell drugs over the phone, even if the caller is outside of the state, to a person in Ohio is sufficient to establish jurisdiction and moreover, that providing drugs in the supply chain constitutes offering to sell. (Doc. 7, Ex. P at 4).

The Ohio Court of Appeals made the following factual findings with respect to the offense, which are presumed correct:[2]

> Officer Mercado was in Cincinnati at all times when he spoke on the telephone with Montenegro. There is ample evidence in the record that Montenegro was aware that Officer Mercado was in Cincinnati, and that at least some of the marijuana that he wanted to sell to Officer Mercado would be purchased in or delivered to Hamilton County, Ohio. Campa worked closely with Montenegro and was aware of the intended destination for the marijuana. Campa supplied the marijuana that was the subject of this transaction. When Officer Mercado arrived in Indiana to pay for the drugs to be delivered to

---

[2] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has not cited or presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein. Therefore, petitioner has not demonstrated by clear and convincing evidence that such findings are erroneous.

7

> Hamilton County, Campa was driving the van containing the marijuana. Campa told Officer Mercado, then still undercover, to examine the marijuana.

(*Id.* at 4-5). Holding that there was sufficient evidence linking the offense to Ohio, the Ohio Court of Appeals concluded that the trial court had subject-matter jurisdiction. (*Id.* at 5).

On federal habeas corpus review, this Court must defer to the state court's interpretation of state law. *See Parker v. Scott,* 394 F.3d 1302, 1319 (10th Cir. 2005); *Johnson v. Coyle,* 200 F.3d 987, 993 (6th Cir. 2000). In this case, the Ohio Court of Appeals determined that the jurisdictional requirement of Ohio Rev. Code § 2901.11(A) had been met because, an element of the offense, the offer to sell, occurred in Ohio in that petitioner supplied the drugs for a transaction arranged via telephone to an undercover buyer in Cincinnati.

Petitioner has not demonstrated that the alleged jurisdictional error deprived him of a fundamentally fair criminal proceeding. Accordingly, petitioner is not entitled to habeas corpus relief with respect to ground one.

**II. Petitioner is not entitled to habeas corpus relief on the basis of his claim that the prosecution withheld evidence, asserted in ground two of the petition.**

In ground two of the petition, petitioner contends that the prosecutor violated his due process rights under *Brady v. Maryland,* 373 U.S. 83 (1963), when he failed to inform the defense that the marijuana had been destroyed.

8

Under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it

should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). A federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

To establish a *Brady* violation, it must be shown that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the suppressed evidence was material to guilt or punishment, "irrespective of the good faith or bad faith of the prosecution." *Moore v. Illinois,* 408 U.S. 786, 794-95 (1972); *see also Brady,* 373 U.S. at 87; *Bowling v. Parker,* 138 F.Supp.2d 821, 880 (E.D. Ky. 2001), *aff'd,* 344 F.3d 487 (6th Cir. 2003), *cert. denied,* 513 U.S. 862 (2004). Evidence is deemed "material" under *Brady* "only if there is a reasonable

probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the trial. *Id.* "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, 109-10 (1976). This standard for determining materiality focuses on the defendant's guilt or innocence, rather than on the impact of the undisclosed evidence on the defendant's ability to prepare for trial. *United States v. Phillip,* 948 F.2d 241, 249 (6th Cir. 1991) (citing *Agurs,* 427 U.S. at 112 n.20), *cert. denied,* 504 U.S. 930 (1992).

Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule. *Bagley,* 473 U.S. at 676. Impeachment evidence is considered "evidence favorable to the accused" because the jury's assessment of the reliability and truthfulness of a given witness may well be determinative of the defendant's guilt or innocence. *Id.*; *see also Giglio v. United States,* 405 U.S. 150, 153 (1972). On the other hand, evidence that tends to inculpate the defendant or that is neither facially exculpatory nor impeaching does not fall under *Brady*'s proscription. *United States v. Simpson,* 901 F.2d 1223, 1228 (5th Cir. 1990); *United States v. Comosona,* 848 F.2d 1110, 1115 (10th Cir. 1988); *cf. Agurs,* 427 U.S. at 112 n.20; *Phillip,* 948 F.2d at 250.

11

The *Brady* principles apply only to a complete failure to disclose exculpatory information. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986), *cert. denied* 480 U.S. 922 (1987); *United States v. Holloway*, 740 F.2d 1373, 1381 (6th Cir.), *cert. denied*, 469 U. S. 1021 (1984). Tardy disclosures of exculpatory evidence do not violate *Brady* unless the defendant has been prejudiced by the delay in disclosure. *Id.* If the disclosure is made "in time for full and adequate correction," no prejudice to the defense occurs. *Holloway*, 740 F.2d at 1381, quoting *United States v. Enright*, 579 F.2d 980, 989 (6th Cir. 1978).

The Ohio Court of Appeals described the circumstances which gave rise to petitioner's *Brady* claim:

> In response to Campa's pretrial motion for discovery, the state disclosed that it had retrieved 22,716 grams of marijuana–over fifty pounds–in fifty baggies from the van Campa had been driving in Indiana. Approximately one week before trial, Indiana authorities informed the state that the marijuana had been inadvertently destroyed. Not until the second day of trial, during the direct examination of an Indiana police officer, did Campa first learn that the marijuana–physical evidence crucial to the proof of counts three and four of the indictment–had been destroyed. During the week before trial, the state had sought a stipulation from Campa as to the accuracy of a lab report on the marijuana conducted by the Indianapolis-Marion County Forensic Services Agency. Campa had no opportunity to conduct an independent analysis or weighing of the marijuana.
>
> Upon learning that the marijuana had been destroyed, Campa moved for a mistrial on all three counts in the indictment. At a hearing on the motion, the trial court inquired of the assistant prosecutor,

12

>The Court: Well, what's the reason you didn't disclose the evidence favorable?
>Assistant prosecutor: Your Honor, when I found out about it, and it may have been, I'm guessing it was around the –
>The Court: As soon as you found out you should have told him, right?
>Assistant prosecutor: I don't disagree with that. However, my analysis at the time, my thinking was that we don't have it, we never did have it from Indianapolis. My thinking was, it's been destroyed, we are not going to produce it, we don't have to produce it.
>The Court: You realize that it's evidence favorable that you have no longer have the actual marijuana, for whatever purpose. I mean it's not whether you think it's important, it's whether they do.
>
>The trial court granted, in part, Campa's motion for a mistrial. It dismissed counts three and four charging Campa with possession of the marijuana and with preparing it for sale. Both counts required the state to prove the existence of over twenty thousand grams of marijuana. Because the existence of the marijuana was not material to proof of an offer to sell marijuana, the court denied the motion as to count two.

(Doc. 7, Ex. P at 5-6). The Ohio Court of Appeals rejected petitioner's *Brady* claim, finding that the materiality factor of *Brady* had not been satisfied. The Ohio Court of Appeals determined that there was no reasonable probability that the trial result would have been different as to the trafficking count had the state disclosed the absence of the marijuana because the absence or presence of the drugs is not relevant to the state's proof of a knowing offer to sell drugs. (*Id.* at 7).

Accordingly, the decision of the Ohio Court of Appeals denying petitioner's claim of prosecutorial misconduct in discovery was neither contrary to nor involved an unreasonable application of the United States Supreme Court's decision in *Brady* and was not unreasonable in light of the record evidence.

13

In addition, this Court questions whether *Brady* applies in this case. *Brady* does not ordinarily apply to tardy disclosures unless petitioner was prejudiced by the delay. In this case, the tardy disclosure did not prejudice petitioner because counts three and four were dismissed and the disclosure was not exculpatory with respect to count two.

In his memorandum in support of jurisdiction, petitioner attempts to shift the argument away from the *Brady* claim raised in the state court, arguing that the actual destruction of the drug evidence, as opposed to the failure to disclose the destruction of the drug evidence violated his right to due process. He cites *Monzo v. Edwards,* 281 F.3d 568, 579-580 (6th Cir. 2002) which in turn relies on the standard in *Arizona v. Youngblood,* 488 U.S. 51, 57 (1988).

The Due Process Clause requires a different result from *Brady* when the issue involves the "failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Arizona v. Youngblood,* 488 U.S. 51, 57 (1988). In such a case, the failure to preserve potentially exculpatory evidence does not constitute a denial of due process unless the criminal defendant can show bad faith on the part of the police. *Id.* at 58. The difference in treatment partly stems from concern that "[w]henever potentially exculpatory material is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *Id.* at 57-58,

14

quoting *California v. Trombetta,* 467 U.S. 479, 486 (1984). It is also based in part on the Court's unwillingness to read the Due Process Clause as "imposing on the police an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Id.* at 58. "[R]equiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Id.*

In this case, petitioner has not provided any evidence, nor is there any suggestion in the record, that the police acted in bad faith in failing to preserve the marijuana seized. Indeed, at the time the police failed to retain such evidence, they had at least as great an interest in preserving it as petitioner, because it would have been useful to the prosecutor who would later bear the burden of establishing guilt beyond a reasonable doubt with respect to the possession and preparation charges. *Cf. id.* at 59 (Stevens, J., concurring). Indeed, as a result of the destruction of the drug evidence, these charges were dismissed.

Moreover, with respect to the trafficking charge which petitioner challenges in this petition, the drug evidence was not potentially exculpatory.

15

Accordingly, assuming *arguendo* that petitioner had couched his argument in the state court as a *Youngblood* claim thereby preserving it for federal habeas corpus review, the State's destruction of drugs seized would not amount to constitutional error because there has been no showing of bad faith on the part of the police and the evidence would not exonerate petitioner from the trafficking offense he now challenges.

Petitioner is therefore not entitled to habeas corpus relief with respect to his second ground.

## CONCLUSION

Upon careful consideration of the petitioner's objections, and upon conducting a *de novo* review of the record, especially in light of petitioner's objections, the Court finds that petitioner's contentions have either been adequately addressed and properly disposed of by the Judge or present no particularized arguments that warrant specific responses by this Court. The Court finds that the Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case and agrees with the Judge that petitioner's conviction is supported by sufficient evidence and resulted from a fundamentally fair criminal proceeding.

Case: 1:03-cv-00550-HJW-TSH Doc #: 14 Filed: 09/21/05 Page: 16 of 16 PAGEID #: 74

- 16 -

Accordingly, the Court accepts the factual findings and legal reasoning of the Magistrate Judge and hereby **ADOPTS** his Report and Recommendation dated July 29, 2005. The Petition for Writ of Habeas Corpus is, therefore, **DENIED WITH PREJUDICE.**

A certificate of appealability should not issue with respect to petitioner's claims because reasonable jurists could not debate whether these claim should have been resolved in a different manner and, alternatively, whether the issues presented in these grounds for relief are "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

This case is **DISMISSED AND TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

                        s/Herman J. Weber
                    Herman J. Weber, Senior Judge
                    United States District Court